NO. 07-02-0153-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 24, 2002

_____

RICKY CANTU, DBA RICKY'S TOWING, APPELLANT

V.

WILLIAM SCOTT MARTIN, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 2 OF POTTER COUNTY;

NO. 89,223-2; HONORABLE PAMELA SIRMON, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]

In a single issue, appellant Ricky Cantu, dba Ricky's Towing (Cantu), challenges a

judgment in favor of appellee William Scott Martin (Martin) for conversion arising from the

sale of two vehicles in which Martin claimed a security interest. In his issue, Cantu asks

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).

us to decide if the trial court erred in concluding Martin had a mechanic's lien of such a nature as to entitle him to notice of foreclosure of Cantu's licensed storage facility liens.

The events giving rise to this appeal began when Martin performed mechanical work on two trucks, a 1970 Chevrolet pickup and a 1984 GMC semi-tractor. The owner of the trucks failed to pay for the work and Martin retained possession of them to secure his mechanic's lien. *See* Tex. Const. art. 16 § 37; Tex. Prop. Code ch. 70 (Vernon 1995). Because he did not have a secure place to store the vehicles, on October 9, 2000, he hired Cantu to move the trucks to Cantu's storage lot and store them. Cantu picked the vehicles up the next day. According to Martin, in addition to storing the vehicles, Cantu was also supposed to help him foreclose his lien on the vehicles. The transaction between Martin and Cantu was memorialized by a receipt showing Martin as Cantu's customer. The receipt contained a notice, signed by Martin, that the vehicles were subject to repossession if storage charges were not paid.

On October 24, 2000, Martin executed an "Affidavit of Right of Repossession or Control" asserting his right of possession of the GMC truck. At trial, he averred that he did so because he was instructed to do so by an employee of Cantu as a way to get the trucks released to him. However, after being requested to do so, Cantu had refused. Cantu testified that his agreement with Martin was that he would pay storage charges on the trucks, "nobody else." Cantu also admitted that on at least one occasion, Martin had attempted to pick the trucks up, but Cantu refused to let him have possession of them because Martin would not pay the storage charges. Sometime around March 2001, Cantu

2

foreclosed on his storage lien and sold the trucks. It was undisputed that Cantu did not notify Martin of the sales, nor did he pay Martin any of the sale proceeds.

In December 2001, Martin brought the underlying suit alleging breach of contract and conversion. After a bench trial, the trial court rendered the judgment giving rise to this appeal. In the judgment, Martin was awarded $5,459.21 in actual damages, $251 prejudgment interest and $750 in attorney's fees. Responding to Cantu's request, the trial court entered findings of fact and conclusions of law. In its findings of fact, the trial court recited the factual resume we have given above. In addition, the trial court found that Cantu knew Martin "wanted his money and if the [owner] did not pay, [Martin's] plan was to obtain a mechanic's lien on the two vehicles." The court also found that Martin had not been paid and that Cantu sold the trucks without notice to Martin. In a conclusion of law, the trial court found that Cantu "converted property that he knew [Martin] claimed a property right to by selling the property without notice . . . and in violation of [Martin's] filed storage-mechanic's lien."

In support of his proposition that the trial court erred in holding that Martin had a valid mechanic's lien entitling him to notice of foreclosure of his storage lien, Cantu relies heavily on *Thompson v. Apollo Paint & Body Shop*, 768 S.W.2d 373 (Tex.App.--Houston [14th Dist.] 1989, writ denied). In doing so, he reasons that the *Thompson* court held that in order to be entitled to a mechanic's lien, the mechanic must have actual, not constructive, possession of the vehicles in question. He also argues that even if constructive possession was sufficient, there was no constructive possession here

3

because there was no contract between Cantu and Martin that would give a basis for Martin to claim constructive possession.

The facts before *Thompson* are distinguishable from those present here. In that case, Apollo Paint & Body Shop had repaired a Chevrolet Corvette belonging to Leonard Boedecker, *id.* at 373-74. Apollo released the car when Boedecker gave it a check. Subsequently, Boedecker stopped payment on the check, then sold the Corvette to Jay Thompson. *Id.* at 374. Without possession of the car, Apollo held a foreclosure sale, at which time it claimed to have purchased the Corvette. Apollo then made demand on Thompson for possession of the car, which caused Thompson to file suit asking for a declaratory judgment. Apollo asserted that it was entitled to the Corvette, and recovered judgment in the trial court. En route to reversing the trial court and finding title in Thompson, the appellate court considered and discussed section 70.001 of the Property Code. It noted that although the section provided that a mechanic is entitled to possession of a vehicle if it was released in return for payment by a check later dishonored, that right of possession and foreclosure of lien was not valid as against a *bona fide* purchaser. As relevant here, Apollo had argued that its foreclosure was effective, even though it did not have possession of the vehicle, because it had constructive possession of the vehicle. The appellate court rejected that contention. *Id.* at 375.

In this case, however, the evidence is sufficient to sustain the trial court's conclusion that Martin did not release the vehicles because of a conditional payment, but gave possession of them to Cantu as his bailee for the purpose of storing the trucks. As bailee

4

for Martin, Cantu was his agent for the limited purpose of storing the vehicles. Indeed, at trial, Cantu testified unequivocally that he was hired to move and store the vehicles. The trial court could properly have found that Martin still had "possession" of the vehicles within the purview of section 70.001 of the Property Code.

Moreover, even assuming arguendo that Martin did not have possession for purposes of the Property Code, we note that in addition to the statutory lien and enforcement methods set out in chapter 70 of the Property Code, section 37 of the Texas Constitution grants mechanics a lien to secure payment for their work. That section is self-executing and does not require possession by the lienholder. *Clifton v. Jones*, 634 S.W.2d 883, 886 (Tex.App.--El Paso 1982, no writ).

The record is also amply sufficient to support the conclusion that Cantu had actual notice of Martin's lien. When asked why he took possession of the trucks, Cantu testified that Martin "had done some work [and] was afraid that the people wouldn't come pay him and they would . . . take the vehicle without paying his bill." Suffice it to say, under the evidence, the trial court was justified in its conclusion that Cantu converted the vehicles and was liable to Martin for doing so.

Accordingly, Cantu's issue is overruled and the judgment of the trial court is affirmed.

John T. Boyd
Do not publish.                                    Senior Justice

5